UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JUDY FLEMING, | * |
| | * Case No. 1:07-CV-797-MHT |
| Plaintiff, | * |
| | * |
| v. | * COMPLAINT |
| | * |
| MERCK & CO., Inc. | * |
| | * TRIAL BY JURY REQUESTED |
| | * |
| Defendant. | * |

Plaintiff, Judy Fleming, alleges the following against Merck & Co., Inc.:

## I. THE PARTIES

1. Plaintiff, Judy Fleming, is over the age of 19 years and is a resident of Coffee County, Alabama.

2. Merck & Co., Inc., is incorporated in the State of New Jersey and has its principal place of business in White House Station, New Jersey. At all times relevant hereto, Merck was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling, and distributing pharmaceuticals and other products, including VIOXX® (Rofecoxib). Merck does business by agent in Alabama and, on information and belief, at all times relevant, advertised, marketed, promoted, sold, and/or distributed VIOXX® in Coffee County, Alabama.

3. Defendant Merck can be served through its registered agent, Corporation Process Company, 2000 Interstate Park Drive, Suite 204, Montgomery, Alabama 36109.

## II. NATURE OF THE ACTION

4. This is a civil action brought on behalf of Judy Fleming, who was prescribed and used the prescription medication VIOXX®, and suffered a stroke in December 2000 as a result.

5.  VIOXX® (Rofecoxib) is a prescription drug which was approved by the Federal Drug Administration ("FDA") for the treatment of pain related to osteoarthritis, dysmenorrhea, and acute pain. VIOXX® (Rofecoxib) is a drug that belongs to the class of drugs known as cyclooxygenase-2 selective non-steroidal anti-inflammatory agents (NSAID). Defendant Merck manufactured, designed, packaged, marketed, sold, and distributed this drug from May 1999 to September 2004. Defendant Merck encouraged physicians to prescribe VIOXX® (Rofecoxib) to their patients and encouraged patients to ask their physicians for the drug through an aggressive and expensive marketing campaign, including through its sales representatives who made sales calls upon physicians, through direct-to-consumer advertising, and through mail-outs and other methods. Defendant Merck misrepresented the safety and efficacy of this drug and concealed or understated the drug's dangerous side effects, including its propensity to greatly increase the risk of cardiovascular deaths.

6.  Prior to its marketing and sale of VIOXX® (Rofecoxib) to the general public, Defendant Merck knew the drug was defective, unreasonably dangerous, and was known to cause a significant increase in cardiovascular events, including myocardial infarctions and strokes. Despite Defendant Merck's knowledge of the drug's dangerous propensities, it elected to continue to actively market, distribute, and sell VIOXX®, while simultaneously undertaking efforts to hide or suppress the drug's true dangerous propensities from physicians who prescribed the drug to their patients and from patients who would subsequently take the drug as directed by their physicians. Defendant Merck's motive for concealing the dangerous and defective attributes of VIOXX® was to maintain or increase it sales and profits. Defendant Merck's actions were undertaken with callous, conscious, and wanton disregard for the safety, health, and welfare of the general public, including Judy Fleming. Defendant Merck's conduct exhibited a

complete and reckless disregard for the well-being of those who consumed VIOXX® and its conduct amounted to fraud, ill will, recklessness, gross negligence, and willful and intentional disregard for others, including Judy Fleming.

7. Judy Fleming was totally and completely unaware of the dangerous propensities of and the defective nature of VIOXX®. Judy Fleming took the medication with the full trust and advice of her physician, who likewise was not fully informed that the drug created a significant increase in cardiovascular risks, and Judy Fleming placed her faith and very life in the hands of the drug's manufacturer, Merck. As the direct and proximate result of Judy Fleming's ingestion of VIOXX®, Judy Fleming suffered a stroke.

### III.    JURISDICTION AND VENUE

8. The parties are diverse in citizenship and the amount in controversy exceeds the minimal jurisdictional requirements of the court. Jurisdiction is appropriate in this court, pursuant to 28 U.S.C. §1332.

9. Venue is appropriate in this court pursuant to 28 U.S.C. §1391. Defendant Merck is subject to the Court's jurisdiction, and a substantial portion of the events occurred in Alabama.

### CAUSES OF ACTION

### COUNT I – STRICT LIABILITY, PRODUCT LIABILITY, AND/OR FAILURE TO WARN

10. Judy Fleming realleges and restates those paragraphs above as if set forth fully herein.

11. Defendant Merck designed, manufactured, distributed, sold, and/or supplied VIOXX® and placed VIOXX® into the stream of commerce in a defective and unreasonably dangerous condition. Defendant Merck either did not take into account the utility of the product and the risks involved in its use or consciously disregarded this risk-benefit analysis in deciding

whether to market and sell the drug. The drug was unreasonably dangerous and defective as manufactured, marketed, sold, distributed, and otherwise made available to the general public, including Judy Fleming.

12. Further, VIOXX® was defective and unreasonably dangerous because it was marketed and sold to the general public, including Judy Fleming, with inadequate warnings and instructions, in that Merck failed to disclose to prescribing physicians and to the consuming public that the drug was dangerous and defective because it greatly increased the risk of cardiovascular events. Defendant Merck's conduct with respect to providing inadequate warnings was compounded and made worse after Defendant Merck refused to place sufficient warning on its product's label as requested by the FDA and by its providing insufficient warnings and information to prescribing physicians and patients, despite significant information that was available to Defendant Merck about the product's dangerous propensities. Defendant Merck propagated its sale and distribution of a dangerous and defective product through its aggressive and deceptive marketing campaigns and through efforts to suppress the true dangers of the drug from physicians and patients by training its sales force to mislead prescribing physicians.

13. VIOXX® was further defective and unreasonably dangerous because Defendant Merck failed or refused to subject the drug to thorough and complete testing and analysis prior to making it available to physicians to prescribe to their patients. Had the drug been adequately tested and analyzed prior to its withdrawal from the market in September 2004, Defendant Merck would have further confirmed the dangerous propensities of the drug, which would have precluded its approval by the FDA or would have resulted in the drug being greatly curtailed in its sale and use by unsuspecting patients.

14. As the direct and proximate result of Defendant Merck's sale and distribution of the defective and unreasonably dangerous product VIOXX®, as a result of Merck's failure to provide adequate and complete warnings, and as a result of Merck's failure to subject the product to thorough and complete testing, Judy Fleming took the drug as prescribed and directed by her physician, which resulted in significant injuries to her body and person, including a stroke.

WHEREFORE, Judy Fleming demands a money judgment against Defendant Merck in the form of compensatory and punitive damages as a jury deems reasonable and just, plus costs and expenses of these proceedings.

## COUNT II – NEGLIGENCE

15. Judy Fleming realleges and restates those paragraphs above as if set forth fully herein.

16. Defendant Merck had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing, and/or distribution of VIOXX® into the stream of commerce. Defendant Merck failed to exercise ordinary care in the design, manufacture, marketing, sale, testing, and/or distribution of VIOXX® into the stream of commerce.

17. Defendant Merck knew or should have known that VIOXX® created an unreasonable risk of bodily harm, including the risk of heart attacks and strokes, to those persons, including Judy Fleming, who took and ingested the drug. Despite its knowledge of the dangerous nature of VIOXX®, Defendant Merck continued to market, sell, distribute, and supply VIOXX® to the consuming public.

18. At the time of its sale and distribution of VIOXX®, there existed safer and alternative drugs, with fewer adverse side effects and consequences, which were as effective in

the treatment of pain associated with those conditions for which the drug was approved by the FDA and for which it was marketed by Defendant Merck.

19. Defendant Merck knew or reasonably should have known that consumers, such as Judy Fleming, would foreseeably suffer injury or death as a result of the Defendant's failure to exercise ordinary care in its manufacture, distribution, sale, marketing and supplying of VIOXX®, as more specifically described herein.

20. As the direct and proximate result of Defendant Merck's negligent sale, distribution, marketing, manufacturing, and supplying of VIOXX® to the general public, Judy Fleming ingested VIOXX® and suffered a stroke.

21. Defendant knew or should have known that consumers such as Judy Fleming would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described herein.

22. Defendant's conduct in this regard was a contributing cause of Judy Fleming's injuries and damages.

WHEREFORE, Judy Fleming demands a money judgment against Defendant Merck in the form of compensatory damages as a jury deems reasonable and just, plus costs and expenses of these proceedings.

### COUNT III – BREACH OF EXPRESS WARRANTY

23. Judy Fleming realleges and restates those paragraphs above as if set forth fully herein.

24. Defendant Merck made express representations to the general consuming public, including Judy Fleming, about its product VIOXX®. These representations were made by Defendant Merck via an aggressive sales program, including direct-to-consumer advertising,

through its team of sales representatives who provided false, misleading, and inaccurate information to physicians who would prescribe the drug, and through written materials and verbal representations made by Defendant to the consuming public and/or to prescribing physicians.

25.  Defendant Merck represented to the consuming public and to prescribing physicians that its product was safe or was as safe as other NSAIDs, that its product was as effective as other NSAIDs, and that its product did not create increased risks of cardiovascular events, including strokes and heart attacks.

26.  VIOXX®, as manufactured, sold, and distributed to the general public, including Judy Fleming, did not conform to the express representations made by Defendant Merck to the general public, including Judy Fleming, and made by Defendant to prescribing physicians, in that the drug significantly increased the risks of cardiovascular events and was not as effective and safe as represented.

27.  As the direct and proximate result of Defendant Merck's breach of its express warranties, Judy Fleming ingested VIOXX® as prescribed by her physician, and because of her ingestion of said drug, she suffered a stroke.

28.  Defendant Merck's conduct rose to the level of conscious, wanton, reckless, and intentional disregard for the rights and safety of others, including Judy Fleming.

WHEREFORE, Judy Fleming demands a money judgment against Defendant Merck in the form of compensatory damages as a jury deems reasonable and just, plus costs and expenses of these proceedings.

### COUNT IV – BREACH OF IMPLIED WARRANTY

29. Judy Fleming realleges and restates those paragraphs above as if set forth fully herein.

30. At the time Defendant Merck manufactured, marketed, sold, and distributed VIOXX® to the general consuming public, including Judy Fleming, Defendant knew or reasonably should have known the use for which VIOXX® was intended, and Defendant impliedly warranted that its product was of a merchantable quality and was safe and fit for its intended use.

31. Judy Fleming, in deciding to ingest VIOXX® as prescribed by her physician, reasonably relied upon the superior skill, judgment, knowledge, and representations of Defendant Merck relative to the safety and efficacy of its product.

32. VIOXX® was not of merchantable quality when manufactured, sold, marketed, and distributed by Defendant Merck, nor was the product safe or fit for its intended use, inasmuch as the product was unreasonably dangerous and unfit for the ordinary purposes for which it was intended and as approved by the FDA, inasmuch as the drug created unreasonable and unsuspected risks of cardiovascular events and deaths, which Defendant did not make known to the consuming public, including Judy Fleming.

33. As the direct and proximate result of Defendant Merck's breach of its implied warranties to Judy Fleming, Judy Fleming ingested VIOXX® as prescribed by her physician, and because of her ingestion of said drug, she suffered a stroke.

34. Defendant Merck's conduct rose to the level of conscious, wanton, reckless, and intentional disregard for the rights and safety of others, including Judy Fleming.

WHEREFORE, Judy Fleming demands a money judgment against Defendant Merck in the form of compensatory damages as a jury deems reasonable and just, plus costs and expenses of these proceedings.

## COUNT V – FRAUD

35. Judy Fleming realleges and restates those paragraphs above as if set forth fully herein.

36. Defendant Merck negligently, recklessly, intentionally and fraudulently made material misrepresentations that VIOXX® was safe and effective. Defendant represented VIOXX® as safe so that prescribing physicians and the general consuming public, including Judy Fleming, would rely upon said representations when prescribing or purchasing said product.

37. Prior to and following the introduction of VIOXX® into the market as a prescribable pharmaceutical medication, Defendant Merck set in motion a campaign to market its product. Defendant's representations were that VIOXX® was safe and effective. Defendant's representations were made so that Judy Fleming, the general consuming public, and prescribing physicians would rely on said representations and take the drug. In fact, Judy Fleming's prescribing physician and Judy Fleming did rely on Defendant's representations in this regard. Judy Fleming's prescribing physician prescribed the drug as a safe NSAID, and Judy Fleming took the drug in full reliance that the drug was safe and effective for its intended purpose.

38. At the time Defendant Merck made these representations, however, it was aware that these representations were false and Defendant, with full knowledge of the falsity of the representations, made the representations with reckless disregard to the falsity thereof.

39. In addition, or in the alternative, Defendant Merck with full knowledge of the dangerous propensities of its drug VIOXX® mistakenly, innocently, intentionally, willfully, knowingly and/or recklessly withheld the true dangers of the drug from the medical community, from prescribing physicians, and from the consuming public, including Judy Fleming and her physician.

40. But for Defendant Merck's misrepresentations, suppressions, and concealment of critical information relative to VIOXX®, Judy Fleming would not have ingested VIOXX® and, consequently, would not have suffered from a stroke and would not have suffered the resulting injuries and damages as set forth in more detail herein. As the direct and proximate result of the Defendant's fraudulent conduct, Judy Fleming suffered a serious cerebrovascular event.

WHEREFORE, Judy Fleming demands a money judgment against Defendant Merck in the form of compensatory and punitive damages, as a jury deems reasonable and just, plus costs and expenses of these proceedings.

## DAMAGES

41. Judy Fleming hereby seeks compensation for all damages permitted under Alabama law as a result of her stroke. Upon the trial of this case, it will be shown that Judy Fleming sustained injuries, including a stroke and damages as a direct and proximate result of Defendant Merck's conduct. Judy Fleming respectfully request the Court and jury to determine the amount of loss she has suffered and incurred, in the past and in the future, not only from a financial standpoint, but also in terms of anxiety, distress, fear, pain, and suffering secondary to any physical injury and damages.

42. At all times relevant hereto, Defendant actually knew of the defective nature of

VIOXX® as herein set forth, yet continued to design, manufacture, market, distribute, and sell VIOXX® so as to maximize sales and profits at the expense of the public health and safety, and in conscious disregard of the foreseeable harm caused by VIOXX®. Defendant's conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill-will, recklessness, gross negligence, or willful or intentional disregard of Judy Fleming's individual rights. Judy Fleming, therefore, is entitled to punitive damages from Defendant.

43. Judy Fleming hereby request a trial by jury on all issues in this case and hereby tender the requisite jury fee simultaneously with this Complaint.

WHEREFORE, Judy Fleming demands judgment against Defendant for general damages and demands interest and the costs and disbursements of this action and such other and further relief as the Court deems just and proper. Judy Fleming further demands punitive damages in such an amount as a jury deems reasonable given that Defendant engaged in egregious, tortuous conduct by which Judy Fleming was aggrieved and given that Defendant's egregious tortuous conduct was part of a pattern of similar conduct directed at the public generally.

Plaintiff further demands trial by jury on all issues to be tried.

Respectfully submitted this the 1st day of September 2007.

Andy D. Birchfield (BIR006)
W. Roger Smith (SMI257)
Benjamin L. Locklar (LOC009)
Attorneys for Plaintiff

OF COUNSEL:

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
(334) 269-2343

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000296
Cashier ID: cstrecke
Transaction Date: 09/05/2007
Payer Name: KATHRYN BAUMAN RUBENSTEIN
------------------------------------
CIVIL FILING FEE
 For: KATHRYN BAUMAN RUBENSTEIN
 Case/Party: D-ALM-1-07-CV-000798-001
 Amount:         $350.00
------------------------------------
CASH
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

DALM1:07CV000798-MHT
```

RUBENSTEIN V BAUMAN ET AL

KATHRYN BAUMAN RUBENSTEIN

P O BOX 2243
DOTHAN   AL   36302