# UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF ALABAMA

OFFICE OF THE CLERK

POST OFFICE BOX 711

MONTGOMERY, ALABAMA 36101-0711

DEBRA P. HACKETT, CLERK

TELEPHONE (334) 954-3600

September 25, 2007

# NOTICE OF CORRECTION

**From:    Clerk's Office**

**Case Style:    Fleming v. Merck & Co., Inc.**

**Case Number:    1:07cv00797-MHT**

**This Notice of Correction was filed in the referenced case this date to attach the correct PDF documents previously attached.**

**The correct PDF documents are attached to this notice for your review.    Reference is made to document # 5, #6, and # 7   filed on   September 24, 2007.**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JUDY FLEMING,                    *
                                 *
          Plaintiff,             *
                                 *
v.                               *        Case No. 1:07-CV-797-MHT
                                 *
MERCK & CO., INC.,               *        **Defendant Requests Trial by Jury**
                                 *
          Defendant.             *


## ANSWER OF DEFENDANT MERCK & CO., INC.

COMES NOW, Defendant Merck & Co., Inc. ("Merck"), by its and through its undersigned attorneys, and hereby answers the Complaint ("Complaint") as follows:

## Response to "I. THE PARTIES"

1.     Merck denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in paragraph 1 of the Complaint.

2.     Merck denies each and every allegation set forth in paragraph 2 of the Complaint, except admits that it is a New Jersey corporation with its principal place of business in New Jersey and that it is authorized to do business in Alabama.  Merck further admits that it manufactured, marketed and distributed the prescription medicine Vioxx until it voluntarily withdrew Vioxx from the worldwide market on September 30, 2004, and that it marketed and distributed Vioxx in Alabama.

3.     Merck admits the information set forth in paragraph 3 of the Complaint.

## Response to "II. NATURE OF THE ACTION"

4.      Merck denies the allegation set forth in paragraph 4 of the Complaint that Vioxx caused plaintiff's alleged injury, and denies knowledge or information sufficient to form a belief as to the truth or falsity of the remaining information set forth in paragraph 4 of the Complaint.

5.      Merck admits that Vioxx is part of a class of medications known as NSAIDs.  Merck respectfully refers the Court to the relevant United States Food and Drug Administration ("FDA")-approved prescribing information for Vioxx for its indicated uses.  Merck further admits that it manufactured, marketed and distributed the prescription medicine Vioxx until it voluntarily withdrew Vioxx from the worldwide market on September 30, 2004, and avers that it employed professional representatives to have product discussions concerning Vioxx with health care professionals.  Merck denies each and every other allegation of paragraph 5 of the Complaint.

6.      Merck denies each and every allegation set forth in paragraph 6 of the Complaint, except admits that it manufactured, marketed and distributed the prescription medicine Vioxx until it voluntarily withdrew Vioxx from the worldwide market on September 30, 2004, and that it marketed and distributed Vioxx in Alabama.

7.      Merck denies each and every allegation set forth in paragraph 7 of the Complaint, except admits that it manufactured, marketed and distributed the prescription medicine Vioxx until it voluntarily withdrew Vioxx from the worldwide market on September 30, 2004.

## Response to "III. JURISDICTION AND VENUE"

8.    Merck denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in sentence one of paragraph 8 of the Complaint, except admits that it is a New Jersey corporation with its principal place of business in New Jersey and that it is authorized to do business in Alabama, and that plaintiff purports to place an amount in controversy exceeding the jurisdictional minimum of the court, but denies there is any legal or factual basis for the relief sought. The allegations set forth in the second sentence of paragraph 8 are legal conclusions to which no responsive pleading is required.  Should a response be deemed required, Merck admits that it is a New Jersey corporation with its principal place of business in New Jersey and that it is authorized to do business in Alabama.

9.    The allegations set forth in paragraph 9 of the Complaint are legal conclusions to which no responsive pleading is required.  Should a response be deemed required, Merck denies the allegations set forth in that paragraph.

## Response to "CAUSES OF ACTION"

## Response to "COUNT I – STRICT LIABILITY, PRODUCT LIABILITY, AND/OR FAILURE TO WARN.

10.    With respect to the allegations set forth in paragraph 10 of the Complaint, Merck repeats and re-alleges each and every admission, denial, averment, and statement contained in paragraphs 1 through 9 of this Answer with the same force and effect as though set forth here in full.

11.    Merck denies each and every allegation set forth in paragraph 11 of the Complaint, except admits that it manufactured, marketed and distributed the prescription medicine Vioxx until it voluntarily withdrew Vioxx from the worldwide market on September 30, 2004.

12.     Merck denies each and every allegation set forth in paragraph 12 of the Complaint, and avers that it manufactured, marketed and distributed the prescription medicine Vioxx as safe and effective for certain indicated uses in a manner consistent with the relevant FDA-approved prescribing information until it voluntarily withdrew Vioxx from the worldwide market on September 30, 2004

13.     Merck denies each and every allegation set forth in paragraph 13 of the Complaint, except admits that it voluntarily withdrew Vioxx from the worldwide market on September 30, 2004.

14.     Merck denies each and every allegation set forth in paragraph 14 of the Complaint.

In response to the unnumbered demand following paragraph 14, Merck denies that Plaintiff is entitled to judgment or that there is any legal or factual basis for the award of damages or other relief to Plaintiff in this action.

### Response to "COUNT II – NEGLIGENCE"

15**.**     With respect to the allegations set forth in paragraph 15 of the Complaint, Merck repeats and re-alleges each and every admission, denial, averment, and statement contained in paragraphs 1 through 14 of this Answer with the same force and effect as though set forth here in full.

16.     The allegations set forth in paragraph 16 of the Complaint are legal conclusions to which no responsive pleading is required.   Should a response be deemed required, Merck denies each and every allegation directed at Merck in paragraph 16 of the Complaint, and respectfully refers the Court to the relevant legal standard, including any conflict of laws rules.

17.     Merck denies each and every allegation of paragraph 17 of the Complaint.

18.     Merck denies each and every allegation of paragraph 18 of the Complaint.

19.     Merck denies each and every allegation of paragraph 19 of the Complaint.

20.     Merck denies each and every allegation of paragraph 20 of the Complaint.

21.     Merck denies each and every allegation of paragraph 21 of the Complaint.

22.     Merck denies each and every allegation of paragraph 22 of the Complaint.

In response to the unnumbered demand following paragraph 22, Merck denies that Plaintiff is entitled to judgment or that there is any legal or factual basis for the award of damages or other relief to Plaintiff in this action.

### Response to "COUNT III – BREACH OF EXPRESS WARRANTY

23.     With respect to the allegations set forth in paragraph 23 of the Complaint, Merck repeats and re-alleges each and every admission, denial, averment, and statement contained in paragraphs 1 through 22 of this Answer with the same force and effect as though set forth here in full.

24.     Merck denies each and every allegation of paragraph 24 of the Complaint.

25.     Merck denies each and every allegation of paragraph 25 of the Complaint.

26.     Merck denies each and every allegation of paragraph 26 of the Complaint.

27.     Merck denies each and every allegation of paragraph 27 of the Complaint.

28.     Merck denies each and every allegation of paragraph 28 of the Complaint.

In response to the unnumbered demand following paragraph 28, Merck denies that Plaintiff is entitled to judgment or that there is any legal or factual basis for the award of damages or other relief to Plaintiff in this action.

### Response to "COUNT IV – BREACH OF IMPLIED WARRANTY"

29.     With respect to the allegations set forth in paragraph 29 of the Complaint, Merck repeats and re-alleges each and every admission, denial, averment, and statement contained in paragraphs 1 through 28 of this Answer with the same force and effect as though set forth here in full.

30.     The allegations set forth in paragraph 30 of the Complaint are legal conclusions to which no responsive pleading is required.  Should a response be deemed required, Merck denies each and every allegation of paragraph 30 of the Complaint.

31.     Merck denies each and every allegation of paragraph 31 of the Complaint.

32.     Merck denies each and every allegation of paragraph 32 of the Complaint.

33.     Merck denies each and every allegation of paragraph 33 of the Complaint.

34.     Merck denies each and every allegation of paragraph 34 of the Complaint.

In response to the unnumbered demand following paragraph 34, Merck denies that Plaintiff is entitled to judgment or that there is any legal or factual basis for the award of damages or other relief to Plaintiff in this action.

### Response to "COUNT V – FRAUD"

35.     With respect to the allegations set forth in paragraph 35 of the Complaint, Merck repeats and re-alleges each and every admission, denial, averment, and statement contained in paragraphs 1 through 34 of this Answer with the same force and effect as though set forth here in full.

36.     Merck denies each and every allegation of paragraph 36 of the Complaint.

37.     Merck denies each and every allegation of paragraph 37 of the Complaint.

38.     Merck denies each and every allegation of paragraph 38 of the Complaint.

39.     Merck denies each and every allegation of paragraph 39 of the Complaint.

40.     Merck denies each and every allegation of paragraph 40 of the Complaint.

In response to the unnumbered demand following paragraph 40, Merck denies that Plaintiff is entitled to judgment or that there is any legal or factual basis for the award of damages or other relief to Plaintiff in this action.

### Response to "DAMAGES"

41.     Merck denies each and every allegation directed at Merck in paragraph 41 of the Complaint, except admits that plaintiff purports to seek compensatory damages, but denies there is any legal or factual basis for the relief sought.

42.     Merck denies each and every allegation directed at Merck in paragraph 42 of the Complaint, except admits that Plaintiff purports to see punitive damages, but denies there is any legal or factual basis for the relief sought.

43.     Merck demands a trial by jury as to all issues so triable.

In response to the unnumbered demand following paragraph 43, Merck admits that Plaintiff brings this action and purports to seek monetary damages but denies that there is any legal or factual basis for such relief.  Merck denies that Plaintiff sustained, or is entitled to, compensatory or punitive damages, or other recovery, fees, costs, expenses, or other relief.

### GENERAL MATTERS

Inasmuch as the Complaint does not describe the alleged underlying claims with sufficient particularity to enable Merck to determine all of its legal, contractual and equitable rights, Merck reserves the right to amend and/or supplement the averments of its Answer to assert any and all pertinent liability defenses ascertained through further investigation and discovery in this action.  In addition, Merck will rely on all defenses that may become available during discovery or trial.

## **GENERAL AFFIRMATIVE DEFENSES**

1.      The Plaintiff's claims may be time-barred, in whole or in part, under applicable statutes of limitations, statutes of repose, or are otherwise untimely.

2.      The Complaint fails to state a claim upon which relief can be granted.

3.      The claims of the Plaintiff may be barred, in whole or in part, from recovery because Plaintiff have made statements or taken actions that preclude Plaintiff from asserting claims or constitute a waiver of Plaintiff' claims.

4.      The claims of the Plaintiff may be barred, in whole or in part, from recovery because of the res judicata effect of prior judgments.

5.      Each and every claim asserted or raised in the Complaint is barred by the doctrines of estoppel, voluntary payment, waiver or statutory and regulatory compliance.

6.      If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries or losses were caused in whole or in part through the operation of nature or other intervening cause or causes.

7.      To the extent that Plaintiff asserts claims based on Merck's adherence to and compliance with applicable federal laws, regulations and rules, such claims are preempted by federal law under the Supremacy Clause of the United States Constitution.

8.      To the extent that Plaintiff asserts claims based upon an alleged failure by Merck to warn Plaintiff directly of alleged dangers associated with the use of Vioxx, such claims are barred under the learned intermediary doctrine because Merck has discharged its duty to warn in its warnings to the prescribing physician.

9.    If Plaintiff has sustained injuries or losses as alleged in the Complaint, such injuries or losses were only so sustained after Plaintiff knowingly, voluntarily, and willfully assumed the risk of any injury as the result of the consumption of, administration of, or exposure to any drug or pharmaceutical preparation manufactured or distributed by Merck or other manufacturer.

10.    If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were caused by the actions of persons not having real or apparent authority to take said actions on behalf of Merck and over whom Merck had no control and for whom Merck may not be held accountable.

11.    If Plaintiff has sustained injuries or losses as alleged in the Complaint, upon information and belief, such injuries and losses were proximately caused by Plaintiff's misuse or abuse of Vioxx.

12.    If Plaintiff has sustained injuries or losses as alleged in the Complaint, such injuries or losses resulted from Plaintiff's pre-existing and unrelated medical, genetic and/or environmental conditions, diseases, or illnesses, subsequent medical conditions or natural courses of conditions for which this defendant is not responsible.

13.    To the extent Plaintiff has settled or will in the future settle with any person or entity with respect to the injuries asserted in the Complaint, Merck's liability, if any, should be reduced accordingly.

14.    To the extent Plaintiff is seeking recovery for benefits entitled to be received or actually received from any other source for injuries alleged in the Complaint, such benefits are not recoverable in this action under Alabama law.

15.    Plaintiff's claims of fraud are barred by reason of Plaintiff's failure to allege the circumstances constituting fraud with particularity, as required by Federal Rule of Civil Procedure 9(b) and Alabama Rule of Civil Procedure 9(b).

16.    Plaintiff's claims are barred, in whole or in part, under the applicable state law because Vioxx was subject to and received pre-market approval by the Food and Drug Administration under 52 Stat. 1040, 21 U.S.C. § 301.

17.    Plaintiff's claims are barred in whole or in part by the First Amendment.

18.    Plaintiff's claims are barred in whole or in part because the product at issue was made in accordance with the state of the art at the time it was manufactured.

19.    There is no practical or technically feasible alternative design that would have reduced the alleged risk without substantially impairing the reasonably anticipated and intended function of Vioxx.

20.    This case may be more appropriately brought in a different venue.

21.    Venue in this case may be improper.

22.    The claims of Plaintiff may be barred, in whole or in part, from recovery because, in this or other courts, Plaintiff has brought actions and received judgments on parts of some or all claims asserted herein.

23.    The claims of Plaintiff may be barred, in whole or in part, from recovery, on the ground that the claims asserted herein have been submitted to arbitration, and a binding decision has been rendered.

24.    The claims of Plaintiff may be barred, in whole or in part, from recovery by release as to Plaintiff's claims.

25.     The claims of Plaintiff may be barred, in whole and in part, by the doctrine of laches.

26.     The claims of Plaintiff are barred, in whole or in part, by Plaintiff's failure to mitigate damages.

27.     To the extent there were any risks associated with the use of the product which is the subject matter of this action that Merck knew or should have known and which gave rise to a duty to warn, Merck at all times discharged such duty through appropriate and adequate warnings in accordance with federal and governing state laws.

28.     The claims of Plaintiff may be barred, in whole or in part, from recovery, due to spoliation of evidence.

29.     The claims of Plaintiff may be barred, in whole or in part, by the governing state laws.

30.     Any conduct allegedly causing liability on the part of Merck is not a substantial cause or factor of any potential or actual injury or damage, if any.

31.     Plaintiff has not sustained any injury or damages compensable at law.

32.     Merck reserves its right to dismiss the Complaint and seek further relief for Plaintiff's failure to provide it with due process of law.

33.     Plaintiff's claims are barred in whole or in part under comment k to Section 402A of the Restatement (Second) of Torts.

34.     Plaintiff's claims are barred in whole or in part because Merck provided adequate "directions or warnings" as to the use of Vioxx and any other drug or

pharmaceutical preparation Plaintiff alleges to have taken within the meaning of comment j to Section 402A of the Restatement (Second) of Torts.

35.    Plaintiff's claims are barred under Section 4, et seq., of the Restatement (Third) of Torts:  Products Liability.

36.    Plaintiff's claims are barred in whole or in part because Vioxx "provides net benefits for a class of patients" within the meaning of comment f to Section 6 of the Restatement (Third) of Torts:  Product Liability.

37.    To the extent that Plaintiff seeks punitive damages for the conduct which allegedly caused injuries asserted in the Complaint, such an award would also, if granted, violate Merck's state and federal constitutional rights.

38.    To the extent that Plaintiff seeks punitive damages for an alleged act or omission of Merck, no act or omission was malicious, willful, wanton, reckless, or grossly negligent and, therefore, any award of punitive damages is barred.

39.    Plaintiff's demand for punitive damages is barred because Vioxx and its labeling were subject to and received pre-market approval by the FDA under 52 Stat. 1040, 21 U.S.C. § 301.

40.    To the extent Plaintiff makes a claim for punitive damages, Merck asserts that such Plaintiff has not complied with statutory requirements to recover punitive damages.

41.    To the extent Plaintiff's claims invoke punitive damages, such claims violate the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the Constitution of the United States, on the following grounds:

(a)    It is a violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution to

impose punitive damages, which are penal in nature, against a civil defendant upon a plaintiff satisfying a burden of proof which is less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

(b)     The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of the award against Defendant, which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *See Pacific Mut. Life Ins. Co. v. Haslip*, 111 S. Ct. 1032, 113 L. Ed. 2d 1.

(c)     The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages which thereby violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(d)     The procedures pursuant to which punitive damages are awarded result in the imposition of different penalties for the same or similar acts and, thus, violate the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution;

(e)     The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the maximum criminal fine for the same or similar conduct, which thereby infringes the Due Process Clause of the Fifth and Fourteenth Amendments and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution; and

(f)     The retroactive application of punitive damages violates the contracts clause of the United States Constitution, Article I, Section 10.

(g)     Plaintiff's claims for punitive damages violate the due process clause of Article I, Section 13 of the Constitution of Alabama, on the following grounds:

    (1)     It is a violation of the due process clause to impose punitive damages which are penal in nature, upon a civil defendant upon a plaintiff satisfying a burden of proof less than the "beyond a reasonable doubt" burden of proof required in criminal cases;

    (2)     The procedures pursuant to which punitive damages are awarded fail to provide a limit on the amount of the award against the defendant;

(3)    The procedures pursuant to which punitive damages are awarded are unconstitutionally vague;

(4)    The procedures pursuant to which punitive damages are awarded fail to provide specific standards for the amount of the award of punitive damages; and

(5)    The award of the punitive damages in this case constituted a deprivation of property without due process of law.

(h)    Plaintiff's attempt to impose punitive or extra-contractual damages on this defendant, on the basis of vicarious liability for the conduct of others, violates the Fifth and Fourteenth Amendments of the United States Constitution.

(i)    The award of punitive damages to the Plaintiff in this action would constitute a deprivation of property without due process of law required under the Fifth and Fourteenth Amendments of the United States Constitution.

(j)    The procedures pursuant to which punitive damages are awarded permit the imposition of an excessive fine in violation of Article I, Section 15 of the Constitution of Alabama.

(k)    The award of punitive damages against the defendant in this action would violate the prohibition against laws that impair the obligations of contracts in violation of Article I, Section 22 of the Constitution of Alabama.

(l)    The procedures pursuant to which punitive damages are awarded are vague and unpredictable such that they violate the defendant's right to defend himself pursuant to Article I, Section 10 of the Constitution of Alabama.

(m)    The procedures pursuant to which punitive damages are awarded permit the imposition of punitive damages in excess of the amount established by the legislature under Ala. Code, Section 27-1-17 (1975) in violation of the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the Constitution of Alabama.

42.    Plaintiff's Complaint seeks to make Merck liable for punitive damages. The United States Supreme Court has reversed the Alabama Supreme Court in the case styled *BMW of North America, Inc. v. Gore*, 116 S. Ct. 1589 (1996), on the issue of punitive damages.    Merck adopts by reference the defenses, criteria, limitations, and standards mandated by the United States Supreme Court decision in that case and in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001); *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003); and any subsequent applicable decisions.

43.    Merck affirmatively pleads that any punitive damages that the Plaintiff may recover in this case should be capped in keeping with Alabama Code § 6-11-21, as amended in 1999 (Act. No. 99-358) and in the spirit of the Alabama Supreme Court's decision in *Oliver v. Towns*, 738 So. 2d 798 (Ala. 1999).

44.    The demand for punitive damages in the instant case is subject to the limitations established by the Alabama legislature and set forth in Ala. Code § 6-11-21 (1975).    Merck adopts by reference the defenses, criteria, limitations, and standards mandated by this Alabama statute.    The Alabama Supreme Court's action in abolishing the legislatively created cap on punitive damages was unconstitutional and is without effect.    Under the Constitutions of the United States and the State of Alabama, the Alabama Supreme Court cannot abolish the cap created by the legislature on punitive damages through this judicial decision.    *See Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 114 S. Ct. 2331, 2340 n.9 (1994).

45.     Merck avers that the punitive damage cap set out in Ala. Code § 6-11-21 (1975) applies to the instant case.  *See Horton Homes, Inc. v. Brooks*, 832 So. 2d 44 (Ala. 2001).

46.     Merck avers that the punitive damages award is subject to limitation based on harm that has occurred and harm that is likely to occur.  *See TXO Prod. Corp. v. Alliance Resources Corp.*, 113 S. Ct. 2711 (1993).

47.     Merck avers that the method of imposing punitive damages violates Amendment 328, Section 6.11 of the Constitution of Alabama, which prohibits the use of a procedural rule to abridge, enlarge, or modify the substantive right of any party.  *See Leonard v. Terminix Int'l Co.*, 854 So. 2d 529 (Ala. 2002).

48.     The imposition of punitive damages is an act of policy making on the part of the judiciary, in violation of Article III, Section 43 of the Constitution of Alabama.

49.     Merck adopts the terms of any applicable legislative act or Alabama Supreme Court decision which now or hereafter precludes punitive damages or limits the amount of punitive damages that can be recovered in an action at law in Alabama.

50.     To the extent that Plaintiff relied upon any theory of breach of warranty, such claims are also barred for lack of timely notice of breach and lack of privity and because the alleged warranties were disclaimed.

51.     Plaintiff's claims are barred by the Statute of Frauds.

52.     Plaintiff cannot show reasonable reliance as a matter of law.

53.     To the extent Plaintiff seek to recover only economic loss in tort, Plaintiff' claims are barred by the economic loss doctrine.

54.    Merck denies that it was guilty of any actionable negligence, denies that Plaintiff was injured thereby, and denies the existence of any proximate cause to the alleged damages.

55.    If Plaintiff has sustained injuries or losses as alleged in the Complaint, such injuries or losses were caused in whole or in part by the contributory negligence of the allegedly injured Plaintiff.

56.    Plaintiff, knowing the nature and properties of Vioxx, consented to use Vioxx, and accordingly Merck cannot be held liable.

57.    To the extent there were any risks associated with the use of Vioxx which Merck knew or should have known and which gave rise to a duty to warn, Merck at all times discharged such duty through appropriate and adequate warnings.

58.    The public interest and benefit in the availability of Vioxx preclude liability of Merck for any risks, if any, resulting from such activities, which were unavoidable given the state of human knowledge at the time those activities were undertaken. With respect to Plaintiff's claims, if it is determined that there is a risk inherent in Vioxx, then such risk, if any, is outweighed by the benefits of Vioxx.

59.    Merck denies that Vioxx was unreasonably dangerous, defective, or that Vioxx created any liability under the Alabama Extended Manufacturer's Liability Doctrine.

60.    Plaintiff's claims based on breach of warranty and negligence are subsumed by the Alabama Extended Manufacturer's Liability Doctrine.

61.     To the extent that Plaintiff's claims and allegations against Merck relate to mere puffery that is not misleading to a reasonable person, such claims are not actionable.

62.     With respect to each and every purported cause of action, the acts of Merck were at all times done in good faith and without malice.

63.     This case may be more appropriately brought in a different venue, and the claims of the Plaintiff are improperly joined and therefore should be severed.

64.     Merck pleads the general issue and denies that it was liable or responsible for any alleged damages to Plaintiff.

65.     Merck hereby gives notice that it intends to rely upon such other defenses as may become available or appear during discovery proceeding in this case or that are included in the master answer to be filed in the Multidistrict Litigation proceeding before Judge Fallon of the Eastern District of Louisiana.  Merck hereby reserves the right to amend its answer to assert any such defense.

66.     Inasmuch as the Complaint does not describe the alleged underlying claims with sufficient particularity to enable Merck to determine all of its legal, contractual and equitable rights, Merck reserves the right to amend and/or supplement the averments of its answer to assert any and all pertinent liability defenses ascertained through further investigation and discovery in this action.

WHEREFORE, Merck respectfully demands judgment dismissing Plaintiff' Complaint with prejudice and awarding Merck its reasonable costs and disbursements with such and other and further relief that the Court may deem just and proper together.

## JURY DEMAND

Defendant requests trial by jury.

<u>**s/ Richard B. Garrett**</u>

Richard B. Garrett
   Bar Number: (ASB-0782-A29R)
Robert C. Brock
   Bar Number:  (ASB-5280-B61R)
F. Chadwick Morriss
   Bar Number: (ASB-8504-S75F)

RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
Post Office box 270
Montgomery, Alabama 36101-0270
Telephone:  334/206-3100
Fax:  334/263-4157
E-mail:          rbg@rsjg.com
               rcb@rsjg.com
               fcm@rsjg.com

**Attorneys for Defendant**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 24, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Andy D. Birchfield, Jr., Esquire
Benjamin L. Locklar, Esquire
Beasley, Allen, Crow, Methvin,
   Portis & Miles, P. C.
P. O. Box 4160
Montgomery, Alabama 36103-4160

**s/Richard B. Garrett**
Of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JUDY FLEMING, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case No. 1:07-CV-797-MHT |
| | * | |
| MERCK & CO., INC., | * | |
| | * | |
| Defendant. | * | |

### MOTION BY DEFENDANT MERCK & CO., INC. TO STAY ALL PROCEEDINGS PENDING TRANSFER DECISION BY THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

### INTRODUCTION

Defendant Merck & Co., Inc. ("Merck") moves this Court to stay all proceedings in this action pending its likely transfer to *In re VIOXX Marketing, Sales Practices & Prods. Liab. Litig.* MDL No. 1657, the Multidistrict Litigation ("MDL") proceeding that has been established in the Eastern District of Louisiana to coordinate all product liability cases involving alleged health risks from Vioxx® (hereinafter the "Vioxx product liability cases") (*See* February 16, 2005 Transfer Order attached hereto as Exhibit A).

Merck has provided notice to the Judicial Panel on Multidistrict Litigation (the "MDL Panel") pursuant to Rule 7.5 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation ("R.P.J.P.M.L.") of the pendency of this "tag-along" action.   (*See* Merck's 262nd Notification of Potential Tag-Along Actions attached hereto as Exhibit B.) Merck expects a conditional transfer order to be issued shortly.

Pending the transfer of this case to the Eastern District of Louisiana, a stay of proceedings is necessary and appropriate to achieve the judicial economies that underlie 28 U.S.C. § 1407. Absent a stay, this Court will expend judicial resources supervising pre-trial proceedings and making rulings in a case over which it will likely soon lose jurisdiction and will probably never see again. Moreover, without a stay, Merck would be significantly and unfairly prejudiced because it would have to duplicate discovery and legal briefing in jurisdictions around the country.

## BACKGROUND

### A.    MDL-1657

On February 16, 2005 the MDL Panel issued a transfer order, establishing MDL Proceeding No. 1657, *In re VIOXX Products Liability Litigation.* The Transfer Order directed that the 148 cases subject to original motions be transferred and coordinated for pretrial proceedings in the U.S. District Court for the Eastern District of Louisiana, before the Honorable Eldon E. Fallon. (*See* **Ex. A.**) In the Transfer Order, the Panel expressly held that the Vioxx product liability cases have overlapping questions of fact:

> On the basis of the papers filed and hearing session held, the Panel finds that the actions in this litigation involve common questions of fact, and that centralization under Section 1407 in the Eastern District of Louisiana will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. All actions focus on the alleged increased health risks (including heart attack and/or stroke) when taking Vioxx, an anti-inflammatory drug, and whether Merck knew of these increased risks and failed to disclose them to the medical community and consumers. Centralization under Section 1407 is necessary in order to eliminate duplicative discovery, avoid inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.

(*Id.* at 2.)

The MDL Panel also held that the "nearly 300 potentially related actions pending in multiple federal districts . . . will be treated as potential tag-along actions." (*Id.* at n.

1.)  There are now processes in place for getting related cases transferred to Judge Fallon's Court quickly and efficiently.  Merck's counsel updates the Panel twice a week in writing of newly-filed related cases and developments in cases still under Panel consideration.  The MDL Panel has been issuing conditional transfer orders transferring hundreds of additional related cases to Judge Fallon based on the information in these tag-along letters.

Pursuant to the reporting procedures mentioned above, on September 7, 2007, Merck provided notice of this action to the Panel.  Merck expects a conditional transfer order to be issued by the MDL Panel in this action no later than two weeks from the Panel's receipt of the notice.  Assuming Plaintiff does not object within the 15-day period set forth in J.P.M.L. Rule 7.4(c), the transfer order will be filed in Judge Fallon's court upon expiration of Plaintiff's period to object, and the case will be transferred for coordinated pretrial proceedings, in all likelihood within 45 days from today.[1]

**B.     The Instant Action**

On or about September 5, 2007, Plaintiff commenced this action against Merck by filing a Complaint in this court.  On September 6, 2007, Merck was served with a copy of Plaintiff's Complaint.  On September 24, 2007, Merck filed an Answer and jury demand.  There is no dispute that this case involves the same factual inquiries that the

---

[1]     In the event Plaintiff chooses to object to transfer to the MDL court, there is a separate procedure for filing objections to the transfer with the MDL Panel.  The issue of whether the case should be transferred would be set for the next available Panel hearing session.  Given the overlapping factual issues this case appears to have with those already in the MDL proceedings, any opposition would almost certainly be futile.  In fact, on June 20, 2005 the MDL Panel considered a wide range of arguments made by plaintiffs to the transfer of 34 of the 321 cases listed on Conditional Transfer Order No. 1 and No. 2, and rejected them all.  (*See* June 20, 2005 Transfer Order (attached hereto as **Exhibit C**).)  The Panel ordered these cases transferred to Judge Fallon's court because it would best "serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation."  (*Id.* at 1.)

Panel notes were present in the Vioxx product liability cases generally, thereby warranting coordinated pre-trial proceedings in the Eastern District of Louisiana. Specifically, it is clear from the face of the Complaint that this case, like the other Vioxx product liability cases, focuses on the alleged increased health risks (including heart attack and stroke) when taking Vioxx, an anti-inflammatory drug, and whether Merck knew of these increased risks and failed to disclose them to the medical community and consumers. For example, Plaintiff alleges that "Vioxx, as manufactured, sold, and distributed to the general public, including Judy Fleming, did not conform to the express representations made by Defendant Merck to the general public, including Judy Fleming, and made by Defendant to prescribing physicians, in that the drug significantly increased the risks of cardiovascular events and was not as effective and safe as represented. "(Compl., ¶ 26.)

## ARGUMENT

Guided by the "policies of justice and efficiency," this Court should exercise its discretion to stay all further proceedings here pending transfer of this case to MDL-1657. *Boudreaux v. Metropolitan Life Ins. Co.,* No. 95-138, 1995 WL 83788, at *1 (E.D. La. Feb. 24, 1995). The power to stay is well established and particularly apt here. It is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S 248, 254 (1936). Where, as here, the MDL Panel has already decided that coordination is appropriate, and has designated a venue for the coordinated proceedings, a stay is particularly appropriate pending conditional transfer to those proceedings. *See New Mexico State Inv. Council v. Alexander*, 317

B.R. 440, 446 (D.N.M. 2004); *Mathern v. Wyeth*, No. Civ. A. 04-2116, 2004 WL 1922028, at *1 (E.D. La. Aug. 25, 2004); *Knearem v. Bayer Corp.*, Civil Action 02-2096-CM, 2002 WL 1173551, at *1 (D. Kan. May 7, 2002); *Jackson ex rel. Jackson v. Johnson & Johnson, Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *6 (W.D. Tenn. Apr. 3, 2001).

When deciding whether to issue a stay pending the MDL Panel's decision on transfer of an individual action, courts look at three factors, namely: (1) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact coordinated; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party. *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). *See also Mathern*, 2004 WL 1922028, at *1. As described below, consideration of all of these factors favors granting a stay of this action. The overwhelming majority of courts to have considered the issue have agreed: more than 3,400 Vioxx cases have been stayed by federal courts around the country pending MDL coordination. These decisions in other Vioxx cases make clear the necessity of a stay here. For example, in *Denny v. Merck & Co., Inc.,* No. 04-cv-00526, slip op. (S.D. Tex. Dec. 6, 2004), the Southern District of Texas court stayed all proceedings over plaintiffs' objection, holding that "[t]he power to stay all proceedings is well established and particularly apt here." *Id.* at 2. The court observed there that "[i]t would not be efficient for this Court to invest its limited time and resources in this claim, only for it to be transferred to MDL. Moreover, both sides will benefit by having a court familiar with the complex issues that arise in pharmaceutical claims." *Id.*

I.    **JUDICIAL ECONOMY MANDATES A STAY.**

Because of the overlapping factual issues and similar legal theories present in the Vioxx cases currently pending in federal court, including this civil action, much work would be needlessly duplicated if pretrial proceedings and discovery continues to go forward on a parallel track with MDL-1657. Moreover, if this Court were not to issue a stay, it would be issuing rulings that would likely be reconsidered after this case is transferred to Judge Fallon's court. As the court in *U.S. Bank, Nat'l Ass'n v. Royal Indem. Co.*, No. Civ. A 3:02-CV-0853-P, 2002 WL 31114069, at * 2 (N.D. Tex. Sept. 23, 2002), noted in granting defendant's motion for a stay, "[i]f the MDL motion is granted, all of the Court's time, energy, and acquired knowledge regarding the action and its pretrial procedures will be wasted." 2002 WL 31114069, at *2. *See also Fontanilles v. Merck & Co., Inc.*, No. 04-22799-CIV-HUCK (S.D. Fla. Dec. 14, 2004), slip op. at 2 ("Judicial consistency, economy and uniformity among similar VIOXX cases would be served by deferring resolution of the remand issue at this time"); *Falick v. Merck & Co., Inc.*, No. 04-3006 (E.D. La. Jan. 3, 2005), slip op. at 2 ("Considering the multitude of cases currently stayed due to the pending MDL coordination, the Court finds that staying the proceedings will serve the interests of judicial economy."). The Court should not expend its limited resources "familiarizing itself with the intricacies of a case that would be heard [for pre-trial purposes] by another judge." *See Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997). Indeed, Judge Fallon has already issued orders anticipating the transfer of cases such as this; those orders will immediately apply upon transfer of the case to his court. *See, e.g., In re VIOXX® Products Liab. Litig.*, Pretrial Order No. 1 (Exhibit D at 1-2) ("This order . . . will also apply to any 'tag-along actions' later filed in, removed to, or transferred to, this Court.").

The Court should also refrain from holding additional status conferences or issuing additional discovery orders because "any efforts on behalf of this Court concerning case management will most likely have to be replicated by the judge that is assigned to handle the consolidated litigation." *Rivers*, 980 F. Supp. at 1360-61. Moreover, MDL courts regularly decide *Daubert* and dispositive motions before they return a case to the transferor court. *See, e.g., In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) (excluding plaintiffs' causation and regulatory experts under *Daubert*); *In re Propulsid Prods. Liab. Litig.*, 261 F. Supp. 2d 603 (E.D. La. 2003) (granting defendant pharmaceutical manufacturer's motion for summary judgment). In fact, it is unlikely that this Court will encounter this case again once it is transferred to an MDL; as a 2004 report from the Administrative Office of the United States Courts revealed, fewer than 10% of the cases that have been resolved through MDL treatment since Congress enacted the MDL statute were ever transferred back to the original transferor district. Accordingly, a stay will conserve judicial resources.

In addition to the waste of judicial resources inherent in proceeding with this action prior to inevitable MDL transfer of this case to MDL-1657, Merck would be substantially prejudiced by duplicative discovery and motion practice if a stay were not put in place. *See American Seafood, Inc. v. Magnolia Processing*, Civ. A. Nos. 92-1030, 92-1086, 1992 WL 102762, at *2 (E.D. Pa. May 7, 1992) ("The duplicative motion practice and discovery proceedings demonstrate that judicial economy and prejudice to the defendants weigh heavily in favor of a stay"). Plaintiffs across the country will surely notice the same set of Merck employees and former employees for deposition. Without

a stay, the risk exists that Merck will have to produce these witnesses multiple times in different jurisdictions.

A stay will not, however, unduly prejudice Plaintiff in this action. First, any delay that Plaintiff may experience will be minimal, and the prejudice to Merck would far outstrip any harm to Plaintiff. *See Arthur-Magna v. Del-Val Financial Corp.*, No. CIV.A. No. 90-4378, 1991 WL 13725, at *1 (D.N.J. Feb. 1, 1991) ("even if a temporary stay can be characterized as a delay prejudicial to plaintiffs, there are considerations of judicial economy and hardship to defendants that are compelling enough to warrant such a delay"). Indeed, all of the parties – including Plaintiff here – will benefit through increased efficiency and coordinated pretrial case management and, as such, any potential delay is outweighed by the potential efficiencies available in a coordinated MDL proceeding. Second, this action is not on the eve of trial. Discovery has not yet begun. Because Plaintiff has expended limited resources to date, she will not be prejudiced by a limited delay. This Court should therefore stay all proceedings in this civil action pending a determination on the transfer of this case to MDL-1657.

## II.    WITHOUT A STAY, THERE IS A RISK OF CONFLICTING RULINGS BETWEEN THIS COURT AND THE MDL COURT.

To avoid the risk of inconsistent substantive legal rulings, pretrial proceedings in this civil action and other actions should proceed in an orderly, coordinated fashion, as directed by the single court selected by the MDL Panel to coordinate these cases. *See Mathern,* 2004 WL 1922028, at * 1 ("a stay of this case pending transfer to the MDL will promote judicial efficiency and avoid conflicting rulings"); *Knearem*, 2002 WL 1173551, at * 1 ("Granting a stay of this litigation avoids the possibility of inconsistent pretrial rulings."); *Shannon v. Merck & Co., Inc.*, No. 2:03CV105-D-B, slip op. (N.D. Miss. Nov.

29, 2004) ("the court finds that because the issues involved in this matter are likely to be similar to other potentially transferred VIOXX cases, the policies of efficiency and consistency of pretrial rulings will be furthered by the this Court staying these proceedings."). Accordingly, the Court should stay these proceedings to ensure the efficient and consistent resolution of pertinent legal issues before the MDL judge.

## CONCLUSION

For the foregoing reasons, Merck respectfully requests that this Court grant its motion to stay all proceedings in this case pending transfer to the MDL proceeding that has been established in the Eastern District of Louisiana.


**s/ Richard B. Garrett**


Richard B. Garrett
    Bar Number: (ASB-0782-A29R)
Robert C. Brock
    Bar Number:  (ASB-5280-B61R)
F. Chadwick Morriss
    Bar Number: (ASB-8504-S75F)


RUSHTON, STAKELY, JOHNSTON
& GARRETT, P.A.
Post Office box 270
Montgomery, Alabama 36101-0270
Telephone:  334/206-3100
Fax:  334/263-4157
E-mail:        rbg@rsjg.com
        rcb@rsjg.com
        fcm@rsjg.com


**Attorneys for Defendants**

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Andy D. Birchfield, Jr., Esquire
Benjamin L. Locklar, Esquire
Beasley, Allen, Crow, Methvin,
     Portis & Miles, P. C.
P. O. Box 4160
Montgomery, Alabama 36103-4160

**s/Richard B. Garrett**_____
Of Counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

JUDY FLEMING,                          *
                                       *
        Plaintiff,                     *
                                       *
v.                                     *       Case No. 1:07-CV-797-MHT
                                       *
MERCK & CO., INC.,                     *
                                       *
        Defendant.                     *

## <u>DISCLOSURE STATEMENT PURSUANT TO RULE 7.1</u>

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, and to enable

Judges and Magistrate Judges to evaluate possible disqualification or recusal, the

undersigned counsel for Merck & Co, Inc., in the above captioned action, certifies that

there are no parents, subsidiaries and/or affiliates of said party that have issued shares

or debt securities to the public, and there are no individuals or entities owning greater

than 10% of company stock.


                              <u>s/ Richard B. Garrett</u>


                              Richard B. Garrett
                                      Bar Number: (ASB-0782-A29R)
                              Robert C. Brock
                                      Bar Number:  (ASB-5280-B61R)
                              F. Chadwick Morriss
                                      Bar Number: (ASB-8504-S75F)


                              RUSHTON, STAKELY, JOHNSTON
                              & GARRETT, P.A.

Post Office box 270
Montgomery, Alabama 36101-0270
Telephone:  334/206-3100
Fax:  334/263-4157
E-mail:      rbg@rsjg.com
             rcb@rsjg.com
             fcm@rsjg.com

**Attorneys for Defendants**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Andy D. Birchfield, Jr., Esquire
Benjamin L. Locklar, Esquire
Beasley, Allen, Crow, Methvin,
     Portis & Miles, P. C.
P. O. Box 4160
Montgomery, Alabama 36103-4160

**s/Richard B. Garrett_____**
Of Counsel